# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JABOREE WILLIAMS,

                  Petitioner,

v.

UNITED STATES OF AMERICA,

                  Respondent.

Case No. 19-CV-1375-JPS

**ORDER**

On September 20, 2019, Petitioner Jaboree Williams ("Williams") filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No 1. On January 13, 2020, he filed an amended motion. ECF No. 11. After much delay caused by COVID-19's effect on Williams's access to the law library at his institution, that motion is now fully briefed. For the reasons explained below, the Court will deny Williams's amended § 2255 motion, in part, and order additional briefing (and, potentially, a hearing) on his remaining claim.

## 1.    LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2255, a federal prisoner may challenge his sentence if the sentence was imposed "in violation of the Constitution or laws of the United States," the sentencing Court lacked jurisdiction to impose the sentence, "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

When reviewing a federal prisoner's § 2255 petition, dismissal without a hearing must be done with caution. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled

to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Id.* at 2255(b). However, it is well established that a district court need not grant an evidentiary hearing in all § 2255 cases. *Martin v. United States*, 789 F.3d 703 (7th Cir. 2015). "A hearing is not necessary on a motion to vacate if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific." *Id.* (citing *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006)). "A district court, however, must grant an evidentiary hearing if the petitioner alleges facts that, if proven, would entitle him to relief." *Id.* (internal quotations and citations omitted).

## 2.    FACTUAL AND PROCEDURAL BACKGROUND

This habeas petition arises from Williams's criminal proceedings before this Court in case number 16-CR-111. There, Williams made his initial appearance on a criminal complaint on June 28, 2016. Case No. 16-CR-111, ECF No. 2.[1] On June 29, 2016, Attorney Richard Kaiser was appointed and entered his appearance. CR-ECF No. 4. Between June 29, 2016 and July 13, 2016, Williams was detained subsequent to a detention hearing conducted on June 30, 2016. CR-ECF No. 13. On July 12, 2016, the grand jury returned an indictment, charging Williams with sex trafficking, among other crimes, CR-ECF No. 21, and Williams was arraigned and entered a plea of not guilty on July 13, 2016, CR-ECF No. 22.

On August 8, 2016, Attorney Kaiser moved to withdraw as counsel. ECF No. 30, and, on August 15, 2016, Williams filed his first pro se motion

---

[1]Hereinafter, docket entries in Case Number 16-CR-111 will be cited as "CR-ECF No."

for new counsel, CR-ECF No. 37. On August 16, 2016, Magistrate Judge William E. Duffin held an ex parte hearing with Attorney Kaiser and Williams, and he allowed Attorney Kaiser to withdraw. CR-ECF No. 38. Attorney Thomas Erickson was then appointed and entered an appearance on behalf of Williams on August 17, 2016. CR-ECF No. 39.

On October 3, 2016, the Court entered a formal trial scheduling order. CR-ECF No. 42. Thereafter, Williams filed a series of pro se motions, including a request for new counsel. *See* CR-ECF Nos. 50, 52, 53, 54, 55. Magistrate Judge Duffin denied all of Williams's motions. CR-ECF No. 56. Shortly thereafter, Attorney Erickson moved to withdraw as counsel. CR-ECF No. 58. At a hearing on December 6, 2016, Magistrate Judge Duffin denied the motion and ordered Attorney Erickson to "work out" the issues he was having with Williams. CR-ECF No. 60. On December 13, 2016, the grand jury returned a superseding indictment, which added additional charges against Williams. CR-ECF No. 62. While he waited to be arraigned on the superseding indictment, Williams filed a letter expressing his dissatisfaction with Attorney Erickson. CR-ECF No. 65. On December 21, 2016, Williams was arraigned on the new indictment and entered a plea of not guilty. CR-ECF No. 66. On January 11, 2017, Attorney Erickson filed a second motion to withdraw as counsel. CR-ECF No. 73.

On January 13, 2017, Attorney Erickson filed a sealed motion "to Introduce Rule 412(B) Evidence at Trial." CR-ECF No. 75. Because the motion is sealed, the Court will not reproduce the relevant excerpts in their entirety, but, essentially, Attorney Erickson sought to allow Williams "to introduce evidence of the four alleged victims' sexual behavior and sexual misconduct." *Id.* at 1. As grounds, the motion claimed that if Williams was not allowed to cross examine (or otherwise introduce evidence about) the

alleged victims regarding their history both before and after their involvement with Williams, "the exclusion would violate his constitutional rights of due process and confrontation per Rule 412(b)(1)(C)." *Id.* at 3. The motion argued that the evidence was sought to be introduced to show that the victims' work for Williams was not coerced. *Id.* The Government opposed this motion. CR-ECF No. 80.

On January 19, 2017, Magistrate Judge Duffin granted Attorney Erickson's motion to withdraw. CR-ECF No. 77. On January 24, 2017, Attorney Jeffrey Jensen was appointed and appeared on behalf of Williams. CR-ECF No. 78.

On March 20, 2017, while the Rule 412 motion played out, the Government emailed the terms of a proposed plea agreement to Attorney Jensen for him and Williams to review. ECF Nos. 19 at 10, 19-1 at 1. The Government's offer asked Williams to plead guilty to obstruction of a sex-trafficking investigation and to conspiracy to commit sex trafficking. ECF No. 19-1 at 1. The Government explained that "[Williams] would be able to argue for 10 years (but not less)" and that the Government "would cap [its] request at 20 years." *Id.* The Government stated that it would seek a second superseding indictment if Williams did not accept the plea. *Id.* The message concluded, "[t]his is our best offer, and we will not extend it again." *Id.*

On March 23, 2017, Attorney Jensen filed a motion requesting an adjournment of the trial dates. CR-ECF No. 93. Therein, Attorney Jensen discussed that

> the government ha[d] recently extended a new offer to settle the case which counsel has conveyed to Williams. Williams has not rejected the offer, and has asked for several days to consider it. Therefore, both the government and the defense

believe that additional time will permit the parties to continue settlement discussions

*Id.* at 2. Attached to the motion was a "Waiver of Speedy Trial Rights" signed by Williams and dated March 21, 2017. CR-ECF No. 93-1.

On March 27, 2017, the United States followed up with a formal written proposed plea agreement sent by email. ECF No. 19-1 at 2–23. Therein, the Government asked Williams to plead guilty to two charges in a pending information: (1) obstruction of a sex-trafficking investigation, in violation of 18 U.S.C. § 1591(d); and (2) conspiracy to commit sex trafficking (in violation of 18 U.S.C. § 1594(c).[2] ECF No. 19-1 at 1. The Government included guideline calculations in the plea, along with the enhancements that the Government would seek to have applied to Williams's sentence. *Id.* at 7–11. Specifically, the proposed plea agreement stated that

> 19. The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in Count One of the Information is **34** pursuant to Sentencing Guidelines Manual §§ 2X1.1 and 2G1.1(a)(1) and the base offense level for the offense charged in Count Two of the Information is **34** pursuant to Sentencing Guidelines Manual §§ 2X1.1 and 2G1.1. The parties further acknowledge and understand that the defendant may not join in this recommendation.

*Id.* at 8 (emphasis added).

According to an affidavit signed by Attorney Jensen, Attorney Jensen called Williams that same day to discuss the contents of the plea

---

[2] Paragraph two of the proposed plea lists the information as charging Williams with violating 18 U.S.C. § 1594**(b)**. Reference to subsection (b) appears to be a typographical error, given that Williams was never charged with any of the offenses underlying 18 U.S.C. § 1594(b). Conversely, 18 U.S.C. § 1594(c) makes reference to 18 U.S.C. § 1591, which Williams was charged with violating.

agreement. *Id.* at 26. Attorney Jensen states that Williams declined the offer and proposed a counteroffer. *Id.* On March 30, 2017, after the Government rejected the counteroffer during a phone call with him, Attorney Jensen sent an email to the Government further describing Williams's counteroffer. *Id.* at 24, 26. Williams, through Attorney Jensen, proposed that he plead guilty to "one count of moving prostitutes over state lines," which Attorney Jensen believed was a felony that carried a ten-year sentence. *Id.* The Government promptly rejected the counteroffer. ECF No. 19 at 11. Attorney Jensen states that he spoke with Williams on March 31, 2017 and told him that if he didn't accept the Government's offer, the Government would file a superseding indictment. *Id.* Williams rejected the plea.

Williams alleges a different story. According to Williams, Attorney Jensen "never made [Williams] aware of the Government's offer." ECF No. 12 at 8. As evidence, Williams submits a letter he penned to Attorney Jensen, dated April 5, 2020, in which Williams discussed that he had not been able to speak with Attorney Jensen and inquired about the status of certain witnesses. ECF No. 11-2. Williams wrote, "I don't want you to work for a plea deal, because that[']s not what I want. If the government doesn't come down to a 0–10 [year recommended sentence] or something close to that, then all talk about pleas are off . . . . I do plan on going to trial if they don't change my charges!" *Id.* at 2, 4. Confusingly, in the next paragraph of his petition, Williams admits that he wrote this letter "in relation to counsel relaying to [him] that the Government was offering [him] the opportunity to plead guilty to the § 1591(d) [offense]." ECF No. 12 at 8. Williams states that Attorney Jensen explained that, under the plea agreement, his base offense level would be 34 and that he was facing a twenty-year maximum

sentence, at the Government's recommendation. *Id.* Williams states that Attorney Jensen advised going to trial. *Id.*

Williams did not accept the plea agreement, and, on April 4, 2017, the grand jury returned a second superseding indictment. CR-ECF No. 95. On April 7, 2017, Williams appeared in court for an arraignment and plea hearing. CR-ECF No. 104.

On May 16, 2017, Magistrate Judge Duffin denied the Rule 412 motion, determining that the proffered evidence had "little, if any, probative value" and that Williams's constitutional rights would not be violated by excluding the evidence. CR-ECF No. 112 at 7–8. On June 2, 2017, Williams, through Attorney Jensen, objected to Magistrate Judge Duffin's order denying his motion. CR-ECF No. 116. The Government responded. CR-ECF No. 119. On July 5, 2017, this Court overruled Williams's objection. CR-ECF No. 124.

On August 22, 2017, the Court conducted a final pretrial conference with the parties. CR-ECF No. 140. During the hearing, the Government requested that the Court review with Williams the fact that a plea offer had been made to him, that Williams had reviewed it, and that he had rejected it. *Id.* The Government, Attorney Jensen, and Williams made statements on the record regarding the fact that a plea offer had been made and rejected by Williams:

> [AUSA] KWATERSKI: Your Honor, just for completeness of the record, I do think that under *Lafler* and *Frye* the defendant needs to state on the record, you know, that the plea offer was presented to him and he has rejected it.
>
> MR. JENSEN: That's fine. If the Court wants to engage Mr. Williams in a colloquy, or I can do it.
>
> THE COURT: Why don't you proceed, Mr. Jensen.

MR. JENSEN: Mr. Williams, the government proposed a written plea agreement, correct?

THE DEFENDANT: Yes.

MR. JENSEN: And I provided a copy of that to you?

THE DEFENDANT: Yes.

MR. JENSEN: Did you have a chance to read it?

THE DEFENDANT: Yes.

MR. JENSEN: Did you have an opportunity to discuss it with me at least one time?

THE DEFENDANT: Yes.

MR. JENSEN: Do you reject that plea offer?

THE DEFENDANT: Yes, I do.

MR. JENSEN: Do you want to have a jury trial?

THE DEFENDANT: Yes, I do.

MR. JENSEN: Have I overlooked anything in anybody's estimation?

CR-ECF No. 182 at 6–12.

The Court then also spoke with Williams on the record:

THE COURT: Mr. Williams, do you also understand that on multiple of the counts pending against you . . . face statutory mandatory terms of imprisonment?

THE DEFENDANT: Yes, Your Honor.

*Id.* at 7.

The jury trial was held from August 28, 2017 to September 1, 2017 (ECF. 146). Ultimately, the jury found Williams guilty of Counts One, Two, Three, Five, Six, Seven, Nine, and Eleven through Twenty-One of the second superseding indictment. *See* CR-ECF No. 161. Williams was sentenced as follows: 360 months as to Counts One, Two, and Three (sex

trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(1), & 1594(a)); 120 months as to Counts Five, Six, and Seven (interstate travel with intent to engage in prostitution, in violation of 18 U.S.C. § 2421); 240 months as to Count Nine (conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C)); 240 months as to Count Eleven (attempt to obstruct sex trafficking investigation, in violation of 18 U.S.C. § 1591(d)); 240 months as to Counts Twelve, Thirteen, Fourteen, Fifteen, and Twenty (witness tampering and evidence tampering, in violation of 18 U.S.C. § 1512(b)(1),(c)); and 240 months as to Count Twenty-One (interstate communications with intent to extort money, in violation of 18 U.S.C. § 875(b)). All of Williams's sentences were ordered to operate concurrently, for a total term of 360 months. *Id.* at 1–3.

Williams appealed on the grounds that "his conviction was tainted by improperly admitted expert testimony." *United States v. Williams*, 900 F.3d 486, 487 (7th Cir. 2018). He argued that the Government's expert witness disclosure had been inadequate under Federal Rule of Criminal Procedure 16(a)(1)(G) and that the expert's testimony should have been excluded as improper character evidence. *Id.* The Seventh Circuit determined that "any deficiency in the written summary" of the expert witness disclosure was harmless in light of the ample evidence against Williams. *Id.* at 489. Moreover, the Seventh Circuit determined that "the government used [the expert's] testimony about the acts of sex traffickers to illustrate their modus operandi, not their character" and that Federal Rule of Evidence 404's "prohibition on character evidence [wa]s inapplicable, because there were no arguments about character at play." *Id.* at 490.

Case 2:19-cv-01375-JPS   Filed 07/25/22   Page 9 of 23   Document 36

On September 20, 2019, Williams filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C § 2255, which he amended, with the Court's permission, on January 13, 2020. ECF Nos. 1, 9, 11. In his amended motion, Williams raises four claims. ECF No. 11. In its screening order, the Court permitted Williams to proceed on three of his claims, all of which concern his trial counsel's alleged ineffective assistance. ECF No. 16. Namely, the Court permitted Williams to proceed on the following claims:

1. that Williams's counsel was ineffective for failing "to appraise [Williams] fully of the circumstances surrounding the plea deal offered by the Government";

2. that Williams's counsel was ineffective as he "misrepresented" the Court's ruling on the Rule 412 motion; and

3. that Williams's counsel was ineffective as he failed to "object to the two level enhancement pursuant [sic] § 3C1.1," which resulted in an alleged "Double Counting."

ECF No. 12.

## 3. ANALYSIS

As discussed in the Court's screening order, it appears that Williams's petition is timely and that his claims are not procedurally defaulted. ECF No. 16 at 3–5. The Government does not challenge Williams's petition on these grounds. Instead, the focus of the Court's analysis is on whether Williams's claims are substantively meritorious. The Court will address each of Williams's three ineffective assistance of counsel claims, in turn.

The Seventh Circuit's opinion in *Blake* neatly summarizes the exacting standard for ineffective assistance of counsel claims:

A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 . . . (1984)[.]

To satisfy the first element of the *Strickland* test, appellant must direct the Court to specific acts or omissions by his counsel. In that context, the Court considers whether in light of all the circumstances counsel's performance was outside the wide range of professionally competent assistance. The Court's assessment of counsel's performance is "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" [*Id.* at 689.]

. . .

To satisfy the second *Strickland* element, appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome.

*Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) ( internal citations and quotations omitted). The Government maintains that the Court need not even reach the *Strickland* test, however, as Williams's claims are "are false, conclusively refuted by the record, and . . . [do] not provide any truthful information to satisfy [the] burden in order to be granted an evidentiary hearing. " ECF No. 19 at 3.

### 3.1 The Declined Plea Agreement

Williams claims that Attorney Jensen "fail[ed] to appraise [Williams] fully of the circumstances surrounding the plea deal offered by the Government." ECF No. 12 at 6. Williams argues that while Attorney Jensen

relayed to Williams the Government's plea agreement[3] (which noted a base offense level of 34 for both of the charges contemplated in the plea), the Government's calculation of the offense level was wrong. The correct base offense level for each count, in Williams's estimation, was 14. Williams argues that Attorney Jensen failed to independently ascertain the correct application of the U.S. Sentencing Guidelines (the "U.S.S.G.") and provided Williams with an incorrect understanding of the terms of the plea agreement. *Id.* at 12.

To be sure, the Sixth Amendment right to effective assistance of counsel extends to the plea bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). As discussed, under the first prong of *Strickland*, "[a] defendant must show that his counsel rendered objectively unreasonable performance and performed seriously below professional standards." *United States v. Smith*, 989 F.3d 575, 581 (7th Cir.), *cert. denied*, 142 S. Ct. 488, 211 L. Ed. 2d 295 (2021) (internal quotations and citations omitted). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Further, when counsel confers with his client about a formal offer, the advice he provides must be legally correct and reasonable as to whether to accept the plea offer. "[A] reasonably competent lawyer must attempt to learn all of the relevant

---

[3]Any contention that Attorney Jensen failed to fully explain the terms of the proffered plea agreement is totally obviated by Williams's own admissions, both in his briefing in the present case, see ECF No. 12 at 8, and in his colloquy with Attorney Jensen during the pretrial conference, see CR-ECF No. 182 at 6–12. This is the only argument to which the Government responds, either missing or not understanding William's claim about miscalculated base offense levels and guideline ranges. Thus, the Court addresses Williams's claim without the benefit of counsel.

facts of the case, make an estimate of the likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." *Brock-Miller v. United States*, 887 F.3d 298, 308 (7th Cir. 2018)

If Williams's calculation (i.e., a base offense level of 14, not 34) is correct, Attorney Jensen did not meet the required standard of care when reviewing the plea agreement and discussing it with his client. *See id.* at 308 ("Brock-Miller appears to have a strong case for section 2255 relief if these errors led to counsel failing to make an estimate of the likely sentence, and instead grossly overestimating her client's sentencing exposure."); *see also Mayfield v. United States*, 955 F.3d 707, 712 (8th Cir. 2020) (suggesting that an attorney's representation may be ineffective where he "advised [his client] to decline a plea offer based on a sentencing enhancement that any reasonable counsel should have known was inapplicable;" "[t]hat the prosecutor made the same mistake would not demonstrate professional reasonableness.").

Based on the Court's preliminary assessment and discussions with the U.S. Probation Department, it appears that the base offense level in the proposed plea agreement may have been calculated incorrectly. First, as to Count One of the plea agreement (i.e., obstruction in violation of 18 U.S.C. § 1591(d)), a strict reading of the relevant statute and U.S.S.G. suggests that the base offense level is 14, as there is no reference in the plea agreement to 18 U.S.C. § 1591(b)(1), which would trigger a base offense level of 34 under 2G1.1(a)(1). Second, as to Count Two, U.S.S.G. § 2G1.1(a) lists the base offense level for the relevant conduct at 14, unless the offense of conviction was made pursuant to 18 U.S.C. § 1591(b)(1). Section 1591(b)(1) concerns sex trafficking of minors under 14 years of age, and, although Williams was convicted of this provision at trial, the proposed plea agreement makes no

mention of and fails to indicate that any of the victims were minors.[4] There also appear to be a few problems in the adjustments made for certain enhancements. At this stage, however, the Court is not well positioned to determine the application of the U.S.S.G. to the 2017 plea agreement; such calculations are typically assigned to the U.S. Probation Office. As will be discussed below, the Court will order more briefing on this issue, with the input of the U.S. Probation Office.

If the offense-level calculations in the plea agreement prove to be incorrect, the next issue is whether Williams was prejudiced. Again, "[t]o establish *Strickland* prejudice[,] a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (internal quotations and citations omitted). "In the context of pleas[,] a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* Where the alleged attorney incompetence led to a defendant rejecting a plea and proceeding to trial, the defendant must show

> that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the

---

[4]The Government may argue that Williams's pleading guilty to Count One, which required him to plead guilty to obstruction of the enforcement of 18 U.S.C. § 1591, ("Sex trafficking of **children** or by force, fraud, or coercion") (emphasis added), generally, provided the basis for Count Two's requirement that the victim be a minor, without specific mention of this element in the plea agreement. However, § 1591 differentiates between minors under the age of 18 and those under the age of 14. The proposed plea agreement fails to recognize this distinction and does not list the age of the victims.

court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.*

At this juncture, the Court cannot ascertain these prerequisites. Had Defense counsel noticed the Government's alleged error, would the Government have corrected it and still offered a plea deal? In light of the corrected offense level, would the Government have changed its recommendation to a level that Williams approved? Would the corrected plea agreement have been acceptable to Williams and the Court? Would the correct guidelines and updated sentencing recommendation have fallen within the range of plea agreements to which Williams would have agreed?[5] Williams will have to prove these questions in the affirmative; this task will be challenging.

The Court will direct the parties to proceed as follows. First, the Government is to contact the U.S. Probation Office for the Eastern District of Wisconsin to obtain their expertise in calculating the sentencing guidelines (at the time the plea was offered) based on the plea agreement at issue, *see* ECF No. 19-1. The Government should file a brief, no longer than ten (10) pages, breaking down the calculation of the offense level and the sentencing guidelines based on that calculation. This brief is due by **August 8, 2022**. The brief should be limited to discussion of the plea agreement and

---

[5]Williams told his attorney, "[i]f the government doesn't come down to a 0–10 [year recommended sentence] or something close to that, then all talk about pleas are off . . . . I do plan on going to trial if they don't change my charges!" ECF No. 11-2 at 2, 4.

sentencing guideline calculation. Williams may respond **within fourteen (14) days** of the Government's brief; his response is limited to ten (10) pages.

If the Government's original calculation was correct, the Court will deny Williams's motion, as he was offered a plea agreement that was correctly understood by the Government, Williams, and Attorney Jensen, and he chose to decline it. If, however, the calculations in the plea agreement were incorrect and defense counsel performed inadequately by overlooking the error, this case must proceed to a hearing at which the Court will determine whether Williams was prejudiced by defense counsel's failure to recognize and address the errors. At the hearing, Williams must show that the Government would have extended a corrected plea agreement, that Williams would have agreed to it, and that the Court would have accepted it. If he is successful, the Court will devise an appropriate remedy, considering the options discussed by the Supreme Court in *Lafler*, 566 U.S. at 170–72.

### 3.2    The Rule 412 Motion

Next, Williams argues that he was denied effective assistance of counsel because his counsel allegedly did not pursue a proper avenue of impeachment of the victims. ECF No. 12 at 16–17. More specifically, Williams claims that his counsel "misrepresented" the Court's ruling regarding the impeachment of the victims by use of their prior and subsequent sexual history and, therefore, denied him the opportunity to attack the credibility of the victims. *Id.* Williams complains that counsel failed to object to the order denying use of the impeachment material, which prohibited Williams from being able to directly appeal the decision. *Id.*

The record unequivocally refutes Williams's assertion. On January 13, 2017, Attorney Erickson filed a motion seeking to introduce the prior and subsequent sexual history of the victims (the exact evidence that Williams believes should have been admitted). ECF No. 75. The Government responded in opposition, ECF No. 80, and Magistrate Judge Duffin denied the motion, ECF No. 112. Thereafter, Attorney Jensen objected to Magistrate Judge Duffin's order, ECF No. 116, the Government responded, ECF No. 119, and this Court ultimately agreed with Magistrate Judge Duffin, ECF No 124. When this case proceeded to trial, there were two orders on Williams's criminal docket that prohibited Attorney Jensen from introducing the sexual-history impeachment evidence that Williams believes should have been introduced. There is no basis on which to question the well-reasoned analysis of either of those orders (indeed, not even Williams raises a legal challenge to the analysis in the orders). Neither of Williams's counsel were deficient in their representation of Williams as to this claim when they sought to introduce evidence and were twice denied the opportunity to do so by the Court.

### 3.3    The Sentencing Enhancement

Finally, Williams claims that his counsel's "failure to object to the two level enhancement pursuant to § 3C1.1," which resulted in a "double counting" of his base offense level, violated his right to effective counsel. ECF No. 12 at 17–18. More specifically, Williams argues that, due to his counsel's failure to object, the parties and the Court miscalculated the advisory guidelines range and the Court might have given Williams a lower sentence had it adopted the correct guideline range.

In the instant case, the U.S. Probation Office prepared a presentence report (the "PSR"), which closely detailed the calculation of Williams's

offense level under the U.S.S.G. CR-ECF No. 155 ¶¶ 73–190. Without relevant objection from the parties, the Court adopted the PSR. CR-ECF No. 160 at 1. Williams focuses his argument on the computations associated with Counts One, Two, and Three of the second superseding indictment (i.e., the counts that received a base offense level of 36 due to enhancements made pursuant to § 3C1.1 of the U.S.S.G.) and the three points added to the offense level for the number of units created by the U.S.S.G.'s grouping requirements. Below, the Court will review the PSR's calculation of Williams's offense level, step by step.

### *Base Offense Level*

As to Counts One, Two, and Three, Williams was found guilty of conduct of an offense under 18 U.S.C. § 1591(b)(1). CR-ECF No. 155 ¶¶ 74–91. Each of these convictions related to three different victims, respectively. Pursuant to U.S.S.G. § 2G1.1(a)(1), a violation of 18 U.S.C. § 1591(b)(1) carries a base offense level of 34. *See* U.S.S.G. § 2G1.1(a)(1). The PSR correctly reflects a base offense level of 34 for Counts One, Two, and Three. CR-ECF No. 155 ¶¶ 74, 80, 86.

### *Adjustment for Obstruction of Justice*

Pursuant to U.S.S.G. § 3C1.1,

If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, **increase the offense level by 2 levels**.

U.S.S.G. § 3C1.1 (emphasis added).

Here, Williams was found guilty of obstructive conduct in Counts Twelve through Fifteen of the second superseding indictment. In summary, between March 2015 and May 2016, Williams contacted witnesses and directed witnesses to destroy, alter, falsify, and withhold evidence in relation to grand jury and trial proceedings. Because his obstructive behavior occurred in relation to each Counts One, Two, and Three, the PSR reflects a two-level increase added to each count, bringing each count up to a score of 36. CR-ECF No. 155 ¶¶ 78, 84, 90.

It is at this step that Williams believes that the obstruction adjustments were improperly "double counted." Williams argues that because the three obstructive conduct adjustments were all premised on the same conduct, the Court was wrong to allow the conduct to be the basis of more than one adjustment. ECF No. 12 at 18. As support, Williams cites *United States v. Haines*, which states that "[i]mpermissible double counting occurs when a district court imposes two or more upward adjustments within the guidelines range, when both are premised on the same conduct." 32 F.3d 290, 293 (7th Cir. 1994), *abrogated by United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012). In 2012, however, the Seventh Circuit expressly abrogated this rule, holding that "double counting is generally permissible unless the text of the guidelines expressly prohibits it." *Vizcarra*, 668 F.3d 516, 519. The court also noted that "[d]ouble counting raises no constitutional concerns"—it is simply a matter of guideline calculations. *Id.* Here, U.S.S.G. § 3C1.1 and its applicable notes contain no discussion on the type of double counting about which Williams complains (i.e., that his obstructive behavior cannot be used to enhance multiple counts).

Case 2:19-cv-01375-JPS   Filed 07/25/22   Page 19 of 23   Document 36

*Grouping*

Next, the offenses are grouped based on the type/scope of the conduct underlying each offense and the harm that was done to each victim. Importantly, pursuant to Application Note 8 at U.S.S.G. § 3C1.1,

> If the defendant is convicted both of an obstruction offense . . . and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense . . . . The offense level for that group of closely related counts will be the offense level for the underlying offense **increased by the 2-level adjustment specified by this section**, or the offense level for the obstruction offense, whichever is greater.

Application Note 8 at U.S.S.G. § 3C1.1. This confirms the 2-level adjustment made for Counts One, Two, and Three.

Once the offenses are grouped, each group is assigned a "unit" value. The U.S.S.G.'s grouping rules define how many "units" must be assigned for each defined group of offenses. U.S.S.G. § 3D1.4. One unit is assigned to the group with the highest offense level; each group within one to four levels of the highest group is also assigned one unit; half units are assigned to any group that is five to eight levels less serious than the group with the highest offense level; any group that is nine or more levels less serious than the group with the highest offense level is disregarded. *Id.* Finally, "[t]he combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the [the chart available at U.S.S.G. § 3D1.4]." *Id.*

Based on the offense type and the presence of three victims, the PSR reflects three groups. CR-ECF No. 155 ¶¶ 181–39. Essentially, Counts One,

Two, and Three, and their related counts, each constituted one of these three groups. Each group had an offense level of 36 and, therefore, received one unit, for a total of three units. Based on the table in U.S.S.G. § 3D1.4, if there are a total of three units, the highest offense level (here, 36) must be increased by three levels. For Williams, that resulted in a total offense level of 39.[6]

In short, the computation of the offense level in the PSR—the one that the Court adopted when sentencing Williams—was correct. No error occurred, and Williams cannot place blame on an attorney who did not object to a correctly calculated offence level. Counsel has no duty to raise claims which lack a legal basis and are doomed to fail; counsel cannot be deemed to have rendered deficient performance for failing to raise meritless claims. Williams's claim fails.

## 4. MOTION FOR SANCTIONS

Williams brought a motion for sanctions against the Government, in which he argues that the Government acted fraudulently by informing the Court that Williams had regained access to the library. ECF No. 33. In the Government's relevant submission, it relayed the answers it received from the Bureau of Prisons (the "BOP") regarding Williams's access to the prison library. ECF No. 31. There is no indication that the Government colluded with the BOP to lie about Williams's access, as Williams suggests. Further, Williams was able to draft his response brief. The Court is allowing him to proceed on one of his claims, and the two claims which the Court is

---

[6]Notably, even if the U.S.S.G. forbade the obstruction conduct to enhance more than one count, it would make no difference in this case. If the enhancement could only apply to one count, there would have been three groups: one with a level 36 and two at levels of 34. Each group would still have been assigned one unit, and the resulting offense level would still be 39.

Case 2:19-cv-01375-JPS   Filed 07/25/22   Page 21 of 23   Document 36

dismissing would not have benefited from a more thoroughly researched and cited reply brief. The Court will deny Williams's motion for sanctions.

**5. CONCLUSION**

For the reasons explained above, the Court will deny in part Williams's amended motion to vacate, set aside, or correct his sentence pursuant to § 2255. ECF No. 11. Williams's claims concerning the Rule 412 motion and sentencing enhancements which he ultimately received are dismissed. He may proceed only on his claim that his counsel was ineffective in reviewing the proposed plea agreement with him. The parties are ordered to proceed with this remaining claim as outlined above, *supra* Section 3.1. The Court will also deny Williams's motion for sanctions.

Accordingly

**IT IS ORDERED** that Petitioner Jaboree Williams's amended motion to set aside, vacate, or correct his sentence pursuant to § 2255, ECF No. 11, be and the same is hereby **DENIED in part.** Williams's claims concerning the Rule 412 motion and sentencing enhancements which he ultimately received are dismissed. He may proceed only on his claim that his counsel was ineffective in reviewing the proposed plea agreement with him;

**IT IS FURTHER ORDERED** that the Government is to contact the U.S. Probation Office for the Eastern District of Wisconsin to obtain their expertise in calculating the sentencing guidelines (at the time the plea was offered) based on the plea agreement at issue, *see* ECF No. 19-1. The Government should file a brief, no longer than ten (10) pages, breaking down the calculation of the offense level and the sentencing guidelines based on that calculation. This brief is due by **August 8, 2022**. Williams may respond **within fourteen (14) days** of the Government's brief; his response

Case 2:19-cv-01375-JPS   Filed 07/25/22   Page 22 of 23   Document 36

is limited to ten (10) pages. Upon receipt of the parties' briefs, the Court will determine whether this case must proceed to a hearing; and

**IT IS FURTHER ORDERED** that Petitioner's motion for sanctions, ECF No. 33, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 25th day of July, 2022.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge