# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JABOREE WILLIAMS,

       Petitioner,

v.

UNITED STATES OF AMERICA,

       Respondent.

Case No. 19-CV-1375-JPS

**ORDER**

   On September 20, 2019, Petitioner Jaboree Williams ("Petitioner") filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 1. On January 13, 2020, pursuant to the Court's November 19, 2019 order, ECF No. 9, Petitioner filed an amended motion. ECF No. 11. That amended motion provides the basis for this Order.

   On January 13, 2020, Petitioner filed a brief in support of his amended § 2255 motion. ECF No. 12. On June 25, 2020, after having been granted an extension, ECF No. 18, Respondent United States of America ("Government") filed a response to the motion. ECF No. 19. Petitioner thereafter requested and received multiple extensions of time to file his reply. ECF Nos. 21, 24, 26, 28, 30, 32. On June 13, 2022, Petitioner filed a reply after the Court informed him no further extensions would be granted. ECF Nos. 32 and 35. On July 25, 2022, the Court entered an order denying in part Petitioner's amended § 2255 motion and ordering additional briefing on the sole remaining claim. ECF No. 36.

   On August 19, 2022, the Government filed a supplemental brief in response to Petitioner's amended § 2255 motion pursuant to the Court's July 25, 2022 order. ECF No. 41. On September 6, 2022, Petitioner filed his

reply to the Government's response. ECF No. 43. Petitioner's amended motion is therefore fully briefed. ECF Nos. 12, 19, 35, 41, 43. For the reasons stated herein, the Court will deny the § 2255 motion.

**1.    BACKGROUND**

Petitioner appeared before the Court in his underlying criminal case[1] on charges of sex trafficking, among others. ECF No. 36 at 2. Petitioner entered a plea of not guilty on July 13, 2016. CR-ECF No. 22.

Over the course of the next several months' proceedings, Petitioner was represented at various points by different attorneys. By the end of January of 2017, Petitioner was being represented by his third attorney, whose conduct is herein at issue. *See generally* CR-ECF Nos. 37-40, 55, 58, 60, 65, 73, 77 (entailing withdrawal of multiple attorneys and appointments of new counsel). On January 24, 2017, this third attorney—Attorney Jeffrey Jensen ("Attorney Jensen")—was appointed and appeared on behalf of Petitioner in his criminal case. CR-ECF No. 78.

On March 20, 2017, the Government emailed the terms of a proposed plea agreement to Attorney Jensen for him and Petitioner to review. ECF Nos. 19 at 10, 19-1 at 1. The Government's offer asked Petitioner to plead guilty to obstruction of a sex-trafficking investigation and to conspiracy to commit sex trafficking. ECF No. 19-1 at 1. The Government explained that "[Petitioner] would be able to argue for 10 years (but not less) and we would cap our recommendation at 20 years." *Id*. The Government concluded the email by stating that "[t]his is our best offer, and we will not extend it again. If not accepted, we plan on superseding with additional charges." *Id*.

---

[1] *United States v. Jaboree Williams*, 16-CR-111 (E.D. Wis.); docket entries thereto shall be cited to herein as "CR-ECF No."

The Government followed up with Attorney Jensen by email on March 27, 2017, attaching the proposed plea agreement and requesting a signed plea agreement by "COB next Thursday, March 30." *Id*. at 2. The attached proposed plea agreement asked Petitioner to plead guilty to two charges in a proposed information: (1) obstruction of a sex-trafficking investigation, in violation of 18 U.S.C. § 1591(d); and (2) conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c).[2]

The Government included guideline calculations in the plea agreement, along with the enhancements that the Government would seek to have applied to Petitioner's sentence. *Id*. at 7–11. Specifically, the plea agreement provided that

> 19. The parties acknowledge and understand that the government will recommend to the sentencing court that the applicable base offense level for the offense charged in Count One of the Information is **34** pursuant to Sentencing Guidelines Manual Manual [sic] §§ 2X1.1 and 2G1.1(a)(1) and the base offense level for the offense charged in Count Two of the Information is 34 pursuant to Sentencing Guidelines manual §§ 2X1.1 and 2G1.1. The parties further acknowledge and understand that the defendant may not join in this recommendation.

*Id*. at 6 (emphasis added).

Attorney Jensen asserts by affidavit that he "communicated with Williams concerning the government's plea offer." ECF No. 41-2 at 1.

---

[2]Paragraph 2 of the plea agreement references a violation of 18 U.S.C. § 1594(b). ECF No. 19-1 at 3. The Court, in its July 25, 2022 order, discerned this to be a typographical error, "given that Williams was never charged with any of the offenses underlying 18 U.S.C. § 1594(b)." ECF No. 36 at 5. Conversely, the Court stated in its July 25, 2022 order, "18 U.S.C. § 1594(c) makes references to 18 U.S.C. § 1591, which Williams was charged with violating." *Id.* at 5 n.2.

Attorney Jensen attests to having a teleconference with Petitioner on March 27, 2017,[3] during which Petitioner and Attorney Jensen "discussed the government's offer, which [Petitioner] rejected." *Id*. at 2. "[Petitioner] directed [Attorney Jensen] to make a counteroffer, which [Attorney Jensen] did by email on March 30, 2017." *Id*.

On March 30, 2017, Attorney Jensen communicated to the Government by email that "Jaboree did authorize me to make a counteroffer. He will plead guilty to one count of moving prostitutes over state lines which, I believe, is a ten year felony." ECF No. 19-1 at 24. The Government declined the counteroffer and "suggested that [Attorney Jensen] talk to Williams again because [it] intend[ed] to file a superseding indictment." ECF No. 41-2 at 2. Petitioner again declined the Government's plea offer. *Id*. On April 4, 2017, the grand jury returned a second superseding indictment following Petitioner's persistent rejection of the Government's plea offer. CR-ECF No. 95.

Attorney Jensen attests to receiving a typewritten letter from Petitioner[4] on April 10, 2017. ECF No. 41-2. In the letter, Petitioner expressed his "intentions concerning plea agreements." *Id*. Attorney Jensen

---

[3] Attorney Jensen's affidavit states that he received the proposed plea agreement on "March 27, 2020" and that he had the teleconference with Williams that same day. ECF No. 41-2 at 2. The remainder of the dates referenced in the affidavit are in 2017, and the Court assumes that "2020" was a typographical error intended to read "2017."

[4] Petitioner has filed with the Court a handwritten letter dated April 5, 2017, purportedly sent to Attorney Jensen. *See* ECF No. 11-2. Attorney Jensen claims to have never received that specific handwritten letter. ECF No. 41-2 at 2. Attorney Jensen claims he received a "very similar [], but not identical" typewritten letter on April 10, 2017. *Id*. Attorney Jensen does not appear to claim that there is any material difference between the letters and their contents.

states that Petitioner described "what would be acceptable to him for a plea agreement, and what would not be acceptable." *Id*.

Petitioner's letter dated April 5, 2017 states that Petitioner had "tried to call [Attorney Jensen] many times" but that Attorney Jensen never answered. ECF No. 11-2. Petitioner wrote, "I don't want you to work for a plea deal, because that's not what I want. [I]f the government doesn't come down to a 0-10 or something close to that, then all talk about pleas are [sic] off." *Id*. at 2. Otherwise, Petitioner wrote, he would rather go to trial. *Id*. Petitioner expressed concern that "all [Attorney Jensen] want[ed] is a plea deal . . . ." *Id*.

Attorney Jensen claims that he responded by letter to Petitioner on August 5, 2017, reminding Petitioner that "Judge Stadtmueller ordered that any plea agreement be filed by August 15, 2017, in order to be eligible for the three point reduction for acceptance of responsibility." ECF No. 41-2 at 2–3. Jensen further attests that at the final pretrial conference held on August 22, 2017, he "told the court that [he] had met with Williams at least one time concerning the plea offer [and] provided him with a copy of the written offer, and that he rejected it." *Id*. at 3. During the final pretrial conference, Petitioner and Attorney Jensen both confirmed that a plea offer had been made and was rejected by Petitioner. CR-ECF No. 182 at 6. The Government also stated that "[w]ith Mr. Jensen we did discuss a plea offer which Mr. Jensen communicated to us at one point that Mr. Williams was going to accept and then he later rejected it." *Id*. at 3.

The Court at that time also confirmed with Petitioner that he understood that "on multiple of the counts pending against you . . . face statutory mandatory terms of imprisonment." *Id*. at 7.

At Petitioner's jury trial, held from August 28, 2017 to September 1, 2017, the jury found Petitioner guilty of Counts One, Two, Three, Five, Six, Seven, Nine, and Eleven through Twenty-One of the second superseding indictment. CR-ECF No. 149. Petitioner was sentenced to concurrent sentences for a total term of 360 months. ECF No. 36 at 9.

Following an unsuccessful appeal to the Seventh Circuit, Petitioner filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, which he amended, with the Court's permission, on January 13, 2020. ECF No. 36 at 10. He raised several claims therein, only one of which remains. The surviving allegation is that Attorney Jensen failed to discern and object to the Government's alleged miscalculation of the offense level. *Id*. at 11–12.

Petitioner attests that, at some unspecified time, Attorney Jensen had relayed to him "that the Government was offering Petitioner the opportunity to plead guilty to the § 1591(d), however Counsel also included that since this offense started at an offense level 34, along with Petitioner's Criminal History, petitioner would be looking at the 20 year maximum." ECF No. 12 at 8. Petitioner wrote in his January 13, 2020 brief to the Court that "Counsel had actually provided Petitioner with some very inaccurate advice . . . ." *Id*. According to Petitioner, "the base offense level for Obstruction of a Sex Trafficking Investigation in violation of 18 U.S.C. 1591(d) begins at level 14." *Id*. Petitioner further wrote at that time that "[a]s Counsel had misinformed Petitioner as to the correct base offense level to the § 1591(d), Petitioner was prejudiced by the increase of the amount of time that he faced." *Id.* He continued, "not only was the statutory maximum of the 1591(d) (20 years) significantly lower than the life sentence Petitioner was exposed to be going to trial on the Superseding Indictment, but was ten

(10) years below the 260 months (30 years) imposed by the Court after Petitioner's trial by jury." *Id*. Petitioner asserts that "[w]ith the base offense level of the 1591(d) being a level 14; combined with the 2 level enhancement for having more than four victims, and the 2 level enhancement for the drug offenses, would bring Petitioner's base offense level to a 20." *Id*.

As summarized by the Court in its July 25, 2022 order: "Williams argues that Attorney Jensen failed to independently ascertain the correct application of the U.S. Sentencing Guidelines (the 'U.S.S.G.') . . . ." ECF No. 36 at 12. The Court at that time wrote that "[i]f Williams's calculation (i.e., a base offense level of 14, not 34) is correct, Attorney Jensen did not meet the required standard of care when reviewing the plea agreement and discussing it with his client." *Id*. (subsequently quoting *Brock-Miller v. United States*, 887 F.3d 298, 308 (7th Cir. 2018) ("Brock-Miller appears to have a strong case for section 2255 relief if these errors led to counsel failing to make an estimate of the likely sentence, and instead grossly overestimating her client's sentencing exposure.")).

As part of its July 25, 2022 order, the Court also ordered the parties to provide supplemental briefing on the issue (and that of the propriety and necessity of holding a hearing), as the Court was not "well positioned to determine the application of the U.S.S.G. to the 2017 plea agreement; such calculations are typically assigned to the U.S. Probation Office." *Id*. at 14.

2. **ANALYSIS**

   2.1 **Evidentiary Hearing**

As mentioned above, the Court ultimately permitted Petitioner to proceed on a single claim of ineffective assistance of counsel relating to allegedly erroneous sentencing guideline calculations included in the plea

offer in his federal criminal case. ECF No. 36.[5] The Court, at the time of its July 25, 2022 order, declined to make a determination as to the necessity and propriety of holding a hearing on Petitioner's remaining ineffective assistance of counsel claim. *Id*.

A petitioner is "entitled to an evidentiary hearing unless 'the files and the records of the case conclusively show that [he] is entitled to no relief.'" *Osagiede v. United States,* 543 F.3d 399, 406 (7th Cir. 2008) (citing 28 U.S.C. § 2255(b)). "Ineffective assistance claims often require an evidentiary hearing because they frequently allege facts that the record does not fully disclose." *Id*. at 408. "Ineffective assistance claims generally require an evidentiary hearing if the record contains insufficient facts to explain counsel's actions as tactical." *Id*. at 412.

Petitioner writes that he is "entitled to an evidentiary hearing because he has alleged material facts which if accepted as true, would entitle Petitioner to the relief he has requested." ECF No. 2 at 2. The Government asserts that a hearing is neither necessary nor required because "the issues raised here can be resolved on the existing record, which conclusively demonstrates that the petitioner is entitled to no relief." ECF No. 19 at 3. Considering the Government's candor regarding the plea offer it provided in this case, plus the demonstration in the record of Petitioner's disinclination towards accepting a plea, the Court concurs with the Government.

---

[5]The Court disallowed Petitioner from proceeding on his claims regarding a Rule 412 motion and his counsel's failure to object to the Court's jury instructions. ECF Nos. 16 and 36.

## 2.2 Merits of Petitioner's Ineffective Assistance of Counsel Claim

In addition to the issue of the propriety and necessity of holding a hearing, the Court ordered the parties in its July 25, 2022 order to supplementally brief the issue of the allegedly incorrect sentencing guidelines calculation. ECF No. 36. Petitioner's amended § 2255 motion alleges that he was "denied his right to make an informed and conscious choice to accept the plea being offered by the Government [because of] Counsel's failure to . . . properly investigate and examine the facts surrounding what Petitioner's guideline range would be if Petitioner accepted the plea . . . ." ECF No. 12 at 12.

The Government begins its supplemental brief by acknowledging that the calculation it provided in the proposed plea agreement was, indeed, erroneous in multiple respects. ECF No. 41 at 1. First, the Government concedes that "the base offense level under U.S.S.G. §§ 2X1.1(a) and 2G1.1(a)(2) for a violation of Title 18, [U.S.C.] Section 1591(d), . . . is 14, not 34." *Id.* at 3. Second, the Government admits that its "proposed recommendation that a two-level enhancement pursuant to §§ 2G1.3(b)(2)(B) and 2G1.3(b)(4) for commission of a sex act was applicable, was, in fact, incorrect." *Id*.

The Government writes that "although the proposed plea agreement in this case included two errors in the government's proposed guidelines calculation, the errors were immaterial." *Id*. The Government provides the correct sentencing guidelines, concluding that

> Williams would have faced a guidelines range of 324-405 months imprisonment had he accepted the proposed plea agreement . . . . The anticipated guidelines range under the proposed plea agreement tendered to Williams in March of

>   2017, which contained the two [] errors, would have been (after acceptance) 360 months-life imprisonment.

*Id*. at 7.

The Government claims that the "miscalculation in the proposed guidelines range was irrelevant because the proposed plea agreement's sentencing recommendations (by the defendant and the government) did not rely whatsoever on the proposed guidelines calculation." *Id*. at 1–2. Instead, the Government argues, "the proposed plea agreement provided that the government would recommend a sentence far below *both* the incorrectly calculated and correctly calculated guidelines ranges." *Id*. at 2 (emphasis added). The Government asserts that Petitioner's rejection of the plea agreement was never based on the sentencing guidelines calculation in the proposed plea agreement, and that it was rather because "the government would not allow him to plead only to a charge with a statutory maximum penalty of 10 years." *Id*. Accordingly, the Government argues, "even a proposed plea agreement with a correctly calculated guidelines range would have been rejected [by Petitioner]." *Id*.

In contrast, Petitioner writes that "but for the unprofessional errors of Counsel, . . . Petitioner would have accepted the Government's plea offer . . . ." ECF No. 12 at 13. Petitioner refers the Court to the April 5, 2017 letter he sent to Attorney Jensen in which he informed Attorney Jensen he would not consider a plea if "the government doesn't come down to a 0-10 or something close to that . . . ." ECF No. 11-2 at 2. Otherwise, Petitioner wrote, "I would rather go to trial . . . ." *Id*. at 2. In Petitioner's September 6, 2022 reply, he claims that the plea offered by the Government and relayed to him by Attorney Jensen was actually "both conducive and germane to

[me]" and that he would have accepted the plea had he known the correct sentencing guideline calculation at the time. ECF No. 43 at 8–9.

Courts apply the two-prong test, set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to evaluate the effectiveness of counsel before trial, at trial, and on appeal. *See Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). First, the movant must show that his counsel's performance was deficient because it "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88.

Second, the movant must show that the deficient performance prejudiced his defense, which means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. On this second prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id*. at 693. "The chance of prejudice need be only better than negligible." *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007) (internal citation omitted). To the other extreme, however, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*.

The *Strickland* standard is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (citation and internal quotations omitted). There is a "strong presumption" that counsel's decisions constitute reasonable litigation strategy. *Strickland*, 466 U.S. at 696; *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 2005) ("[B]ecause counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel.").

The Court first inquires as to whether Attorney Jensen's performance "fell below an objective standard of reasonableness" when he failed to determine that the plea offer provided to him and his client contained erroneous guideline calculations. The Court concludes, based on the record before it and the Government's acknowledgment of the miscalculated sentencing guidelines, that Attorney Jensen's performance fell below an objective standard of reasonableness when he failed to discern those miscalculations.

"Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948). Attorney Jensen's affidavit attests to his having communicated the plea offer to Petitioner, but it makes no comment on whether Attorney Jensen himself reviewed the plea offer prior to communicating it to Petitioner to ensure its accuracy. *See* ECF No. 41-2. Attorney Jensen had an obligation to independently examine the plea offer so that he and his client could make an informed opinion as to how to proceed. *See Von Moltke,* 332 U.S. at 721. He does not claim to have done so. As a result, he communicated inaccurate information to his client at a potentially critical stage in the proceedings. *See Missouri v. Frye,* 566 U.S. 134, 143, 144 (2012) (attesting to centrality of plea bargaining in the modern criminal justice system).

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 522 U.S. 38, 50 (2007). "[T]he Guidelines should be the starting point and the initial benchmark." *Id*. Moreover, "t]he Supreme Court also has emphasized that the recommended Guidelines range must 'be kept in mind

throughout the process.'" *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) (quoting *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)).

This is not a situation in which the attorney at issue made a discretionary exercise of litigation strategy that could be regarded as meriting deference and a presumption of reasonableness. In circumstances such as those, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered strong trial strategy.'" *Strickland*, 466 U.S. at 689. But this omission by Attorney Jensen was neither a matter of strategy nor an exercise of professional judgment, and so a presumption of reasonableness does not apply. Instead, this omission was an oversight resulting from a lack of diligence and an inattention to detail by both the Government and Attorney Jensen. Therefore, the Court finds the first *Strickland* factor as being met.

That finding is ultimately immaterial, however. The inquiry on which the Court's analysis truly turns is whether Attorney Jensen's deficient performance prejudiced Petitioner's defense, which means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. That Attorney Jensen's performance fell below an objective standard of reasonableness is immaterial if Petitioner cannot show that he was prejudiced thereby. Such is the case here.

In the context of plea agreements, "the prejudice prong focuses on whether the deficient information was the decisive factor in a defendant's decision to plead guilty or to proceed to trial." *Julian*, 495 F.3d at 498. The

issue is that Petitioner's assertions on this point in his reply brief filed on September 6, 2022 appear to conflict with the letter he sent to Attorney Jensen in April of 2017 after having been made aware of the Government's plea offer. Petitioner claims in his brief that "but for the unprofessional errors of counsel, Williams would have accepted the governments [sic] offer." ECF No. 43. But there is little if anything in the record to support this contention. Again, the plea offer provided that the Government would recommend to the Court a below-Guidelines sentence, capping its sentencing recommendation at twenty years' imprisonment with no mandatory minimum. ECF No. 41 at 2, 4; ECF No. 11-1. The plea offer also provided that Petitioner "would be able to argue for an ultimate sentence of ten years' imprisonment (without a mandatory minimum)." ECF No. 41 at 4; ECF No. 11-1 ("You would be able to argue for 10 years (but not less) . . . ."). With that information before him, Petitioner decided to go to trial.

In his letter to Attorney Jensen, Petitioner expressed that he didn't want Attorney Jensen to "work for a plea deal" because that's "not what I want." ECF No. 11-2 at 2. He therein stated that "if the government doesn't come down to a 0-10 or something close to that, then all talk about pleas are [sic] off. I would rather go to trial[.]" *Id*. Accordingly, Attorney Jensen counter-offered the Government that Petitioner would "plead guilty to one count of moving prostitutes over state lines which, I believe, is a ten year felony," ECF No. 19-1 at 24, and the Government declined. Knowing that the Government was not interested in allowing him to plead "down to a 0-10 or something close to that" and that the Government was recommending a below-guidelines sentence, Petitioner was adamant about proceeding to trial. It does not appear that Petitioner gave any serious consideration to a

plea agreement that fell outside of his acceptable range of "a 0-10 or something close to that." *See* ECF No. 11-2 at 2.

As earlier noted, it is "not enough for the defendant to show that the errors had some *conceivable* effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693 (emphasis added). Petitioner has asserted rather baldly in his briefing that he would have accepted the plea if he had known of the correct guidelines range at that time, but he has put forward no evidence supporting that contention, and that contention does not appear to be supported by the record. It is true that "[t]he chances of prejudice need only be better than negligible." *Julian*, 495 F.3d at 498 (internal citation omitted). But Petitioner's showing has not surpassed a mere negligible, conceivable possibility of prejudice. Petitioner has not demonstrated that the presence in the plea offer of the incorrect sentencing guidelines calculations "was the decisive factor in [his] decision to plead guilty or to proceed to trial." *See id*. That was Petitioner's burden, and he has not met it. Therefore, the Court cannot grant his motion.

## 3. CONCLUSION

For the reasons discussed herein, the Court must deny Petitioner's § 2255 motion. The Court must also address one additional matter. Under Rule 11(a) of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The petitioner "need not show he is likely to prevail, but he must show that 'reasonably jurists could debate whether (or, for that matter, agree that) the

petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (quoting *Slack*, 529 U.S. at 484).

In light of the well-settled principles governing the disposition of Petitioner's claims, as outlined above, the Court cannot fairly conclude that reasonable jurists would debate whether his motion should be decided differently; as a consequence, the Court must deny a certificate of appealability to him.

Accordingly,

**IT IS ORDERED** that Petitioner's amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, ECF No. 11, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2022.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge

> This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.